# EXHIBIT B

**In the Matter Of:**

*HADJIAN v*

*MERCEDES-BENZ USA*

*KEITH UGONE, PH.D.*

*April 12, 2024*



1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF GEORGIA

---------------------------------X
HAGOP HADJIAN, individually and
on behalf of a class of
similarly situated individuals,

                  Plaintiffs,
                                       Civil Action No.
        VS.                        1:21-CV-00469-ELR

MERCEDES-BENZ USA, LLC,

                  Defendant.
---------------------------------X

REMOTE VIDEOTAPED DEPOSITION

OF

KEITH RAYMOND UGONE, Ph.D.

Friday, April 12, 2024

Reported by:
AYLETTE GONZALEZ, RPR, CLR, CCR
JOB NO. 2024-934554

2

1

2              DATE:  April 12, 2024

3              TIME:  9:58 a.m.

4

5

6      Remote videotaped deposition of KEITH

7  RAYMOND UGONE, Ph.D., pursuant to NOTICE,

8  before AYLETTE GONZALEZ, a Registered

9  Professional Reporter, Certified LiveNote

10  Reporter, Certified Court Reporter and

11  Notary Public of the States of New York,

12  New Jersey, Pennsylvania, Delaware and

13  Texas.

14

15

16

17

18

19

20

21

22

23

24

25

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 5 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

3

1
2      R E M O T E   A P P E A R A N C E S:
3
4   BERGER & MONTAGUE, P.C.
5   Counsel for Plaintiffs
6            1622 Locust Street
7            Philadelphia, Pennsylvania  19103
8   BY:      NATALIE LESSER, ESQ.
9   EMAIL:   nlesser@bm.net
10
11
12  WINSTON & STRAWN, LLP
13  Counsel for Defendant
14           1901 L Street NW
15           Washington, District of Columbia  20036
16  BY:      ROLAND HARTUNG, ESQ.
17  EMAIL:   rhartung@winston.com
18
19
20  ALSO PRESENT:
21           VALERIE BELTRAN, Videographer
22
23
24
25

1                 DR. UGONE (4/12/2024)

2    night job is all the G&A that goes along

3    with it, as you all know, there's other

4    stuff you've got to do.  But yes, I would

5    describe myself in the last three or four

6    years as doing client service work.

7              My entire career before that,

8    you know, as a partner, whether at

9    PricewaterhouseCoopers or at Analysis

10   Group, I would have administrative

11   responsibilities as well, but that's gone

12   by the wayside in my senior advisor

13   position.

14        Q.   And specifically, what

15   percentage of that is serving as an expert

16   witness?

17        A.   The -- I'll be honest with you,

18   I'm trying to interpret your question a

19   little bit.

20        Q.   Sure.

21        A.   When I -- when I get retained

22   -- let me try and you can tell me whether I

23   hit the mark or not.

24              But when I get retained, just

25   because of, you know, my background and my

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 7 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

54

1                DR. UGONE (4/12/2024)

2   experience, I'm generally retained with an

3   eye towards that if the case ever does go

4   to trial, that I would be -- would be the

5   testifier.

6                Now, when you say what

7   percentage of my work is serving as an

8   expert witness, the overall overwhelming

9   vast majority and work is doing the

10  analytical work, right.  And then some

11  cases go to trial, not all cases.  Some

12  cases settle.  Others, I give a deposition,

13  write a report, or maybe it goes away

14  before you even get to that stage.

15               But I would say the vast

16  majority of the work has to do with, you

17  know, the analytical work, and if the case

18  for whatever reason does not go away, then

19  ultimately I would issue a report, be

20  deposed, and then potentially, you know,

21  testify at trial.

22               So that -- that's how I would

23  answer the question.  So it's not like all

24  I do is go into court, you know, and

25  testify.  No, that's a very small

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 8 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

55

1           DR. UGONE (4/12/2024)

2   percentage of what I do, given all the

3   analytical prep work that's required to

4   ever even get to that stage.

5        Q.   Are you ever retained on just a

6   consulting basis, not with any look towards

7   testifying?

8        A.   That can happen, and in fact,

9   sometimes in cases, that's how I'm

10  originally retained as a consultant and it

11  may or may not morph into the expert

12  position where I could potentially testify,

13  so that happens.

14             But you know, I'll be up front,

15  most of the time, it's understood up front

16  that if the case goes to trial, that I

17  would ultimately be a testifier.

18       Q.   Have you studied marketing?

19       A.   In the -- in the sense of -- I

20  think of it as a VEN diagram.  So the -- if

21  you're familiar with a VEN diagram, two

22  overlapping circles, there's some things

23  that, you know, marketing people do that an

24  economist does not do.  And there's some

25  things an economist does, that a marketing

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 9 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

89

1                DR. UGONE (4/12/2024)
2              And in conjunction with that,
3   and in response to the plaintiffs'
4   position, is what the plaintiffs have put
5   forth, you know, is that a reliable
6   methodology for doing that.
7              So the types of cases I've been
8   asked to be engaged on have been on the
9   defense side of those cases, and they
10  usually deal with complex products.  You
11  know, we're not talking about widgets.
12  We're not talking about toothpicks.  You
13  know, we're talking about automobiles here,
14  more complicated, you know, types of
15  products.
16             And I have found that
17  plaintiffs generally have not put forth a
18  common proof approach.  Now, the facts and
19  circumstances are always different, and so
20  my analysis is always tailored to the
21  nature of the product and the facts and
22  circumstances.  But I have not put forth a
23  common proof approach.
24             So first of all, I'm not asked
25  to do that.  I'm not asked to put forth a

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 10 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

92

1                DR. UGONE (4/12/2024)

2   again, I want to be careful because if the

3   court makes certain determinations, and if

4   I'm asked to do something in the future,

5   you know, I'll work within the legal

6   environment to comply with whatever the

7   court may say, but I'm not -- I think I

8   understand your question to be, am I giving

9   a common proof approach to evaluate

10  classwide damages, let's just say as an

11  alternative to what Mr. Boyles is doing,

12  no, I'm not doing that, because I'm

13  pointing out all the reasons why individual

14  inquiry is needed, which negates the common

15  proof approach.

16            It would be contradictory for

17  me to give my opinion about individual

18  inquiry and then say oh, but here's a

19  common proof approach.  I wouldn't do those

20  same things.  I wouldn't do those things in

21  the same reports unless, you know, I was

22  given some guidance by the court or other

23  instructions.

24       Q.   Have you ever found that a

25  common proof approach was appropriate at a

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 11 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

133

1                DR. UGONE (4/12/2024)

2    likelihood that one could come up with a

3    common proof approach.

4              The greater the number of

5    attributes and the wider the distribution

6    about them, you know, the harder it is to

7    do a -- a common proof approach.  So that's

8    how I kind of think about it, rather than

9    saying this product or that product.

10             I think in terms of those kind

11   of attributes as I've described to it and I

12   kind of hinted, I explained a little more

13   just now, but that's what I hinted at

14   earlier when I was drawing my distribution

15   curves.

16        Q.   Can you provide any example

17   products that would have fewer attributes

18   and a narrower range of distribution?

19             MR. HARTUNG:  Objection to

20        form.

21        A.   Yeah.  I mean, you know, that's

22   not what I did on this case was to think

23   about that, but you know, I've always kind

24   of said toothpicks and widgets, you know,

25   those sort of things.

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 12 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

146

1              DR. UGONE (4/12/2024)

2   the assumption is just not viable or causes

3   me to question the veracity of the

4   assumption that was being made.

5              And I don't believe that

6   Mr. Boyles has asked those questions or

7   done those analyses, but what I would say

8   is if I was asked to make certain

9   assumptions, I would look at, you know,

10  what's the impact on the damage model.

11  What's the veracity of the assumption.  Is

12  it something that, if I'm able to test

13  myself, you know, would I have an issue

14  with that assumption.

15              Now, there's some, like I said,

16  on -- like an infringement assumption, I

17  can't test that myself.  That's up for the

18  technical expert.  But things like was

19  there information out in the marketplace,

20  such that at least some consumers knew that

21  there was this debate about the inlets on

22  the vehicles.

23              It would be very hard to make

24  the assumptions that -- that he has made

25  for his analysis, although I'll -- you

170

1            DR. UGONE (4/12/2024)
2    and I'm familiar with the recalls and I'm
3    also familiar with -- because frankly, I
4    get them fairly often on my vehicles, where
5    they say, okay, we've noticed something
6    that needs to be adjusted, bring it into
7    the dealer, no charge to you, and we'll do
8    the adjustment.
9            So I don't know if we want to
10   call that, that's what I was thinking of
11   sort of the technical service bulletin, but
12   I'm familiar with the distinction between,
13   you know, recall which I view as sort of a
14   -- you know, a higher level of urgency
15   versus okay, there's something going on in
16   the car, bring it in, we'll fix it for you
17   and then everything will be okay.
18        Q.   Okay.  Yes.  What you
19   described, I would label as a -- either a
20   TSB or service campaign, if you don't mind
21   if I use that terminology.
22        A.   Okay.
23        Q.   So let's say a vehicle
24   manufacturer issues a TSB or a service
25   campaign, we notice such-and-such issue

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 14 of 18
HADJIAN v                                                    Keith Ugone, Ph.D.
MERCEDES-BENZ USA                                            April 12, 2024

172

1              DR. UGONE (4/12/2024)

2    -- you know, the value of the brand name,

3    because that's a driver of sales.

4              So they're going to do what is

5    necessary to, you know, protect that brand

6    name.  That's part of the calculus and if

7    something needs, you know, to be fixed,

8    that they'll do the cost benefit on what

9    they need to do.  But other than that, I

10   can't tell you, you know, if they put pen

11   to paper and, you know, if they multiply an

12   A times B or not, I can't tell you that.

13        Q.   Do you know if warranty repairs

14   are valued in any way?

15             MR. HARTUNG:  Objection.

16        Outside of the scope of the expert's

17        designation.

18        A.   Yes.  I'm going to need a

19   little bit more when you say are valued,

20   you know, valued by whom, by the consumer,

21   by the company, what, you know --

22        Q.   I understand.

23        A.   But I will also admit that I

24   haven't, you know, in depth studied, you

25   know, the -- you know, the warranties

Case 1:21-cv-00469-ELR   Document 142-4   Filed 04/26/24   Page 15 of 18
HADJIAN v
MERCEDES-BENZ USA
Keith Ugone, Ph.D.
April 12, 2024

173

1             DR. UGONE (4/12/2024)

2    associated with, you know, the

3    Mercedes-Benz vehicles.  I'll answer the

4    question as best I can, but it's not

5    something I've done an in depth study on.

6         Q.   I'm envisioning a TSB service

7    campaign as we just previously discussed

8    and there is a certain amount of labor that

9    is required and a certain amount of parts

10   that's required, and a certain amount of

11   vehicle design and specs and are those --

12   all of those things that go into a vehicle

13   fix, are those things that are capable of

14   being valued?

15        A.   I mean, I think someone could

16   do a cost benefit on that, where I need to

17   stress is, you know, I haven't evaluated

18   that.  I have not looked into who bears the

19   cost, whether there's any sharing between a

20   dealer versus the manufacturer or how that

21   all works.

22             So you know, I'd be hesitant to

23   give too many more, you know, answers

24   beyond that, because I don't know, you

25   know, are they valued, well, I don't know

181

1	DR. UGONE (4/12/2024)

2

3	J U R A T

4

5

6	I, KEITH RAYMOND UGONE, Ph.D.,

7	do hereby certify under penalty of

8	perjury that I have read the

9	foregoing transcript of my deposition

10	taken on April 12, 2024; that I have

11	made such corrections as appear noted

12	herein in ink, initialed by me; that

13	my testimony as contained herein, as

14	corrected, is true and correct.

15

16

17	_____
	KEITH RAYMOND UGONE, Ph.D.

18

19	Subscribed and sworn to before me

20	This _____ day of _____, 2024.

21

22	_____
	NOTARY PUBLIC

23

24

25

                                                                      182
1             DR. UGONE (4/12/2024)

2    -----------------I N D E X-----------------

3    WITNESS:      KEITH RAYMOND UGONE, Ph.D.

4    EXAMINATION BY                         PAGE

5    MS. LESSER                              5

6

7

8

9

10   --------------E X H I B I T S--------------

11   PLAINTIFFS' EXHIBIT              FOR I.D.

12   Plaintiff's Exhibit 1,             20

13   Declaration of Keith R. Ugone,

14   Ph.D., dated March 27, 2024

15

16   Plaintiff's Exhibit 2,             164

17   Important Service Campaign

18   Launch Information

19

20

21

22

23

24

25

183

1  DR. UGONE (4/12/2024)

2  C E R T I F I C A T E

3

4  STATE OF PENNSYLVANIA   )
   : SS.:
   COUNTY OF PHILADELPHIA  )

5

6  I, AYLETTE GONZALEZ, a Notary

7  Public for and within the State of

8  Pennsylvania, do hereby certify:

9  That the witness, KEITH RAYMOND

10 UGONE, Ph.D., whose examination is

11 hereinbefore set forth was duly sworn and

12 that such examination is a true record of

13 the testimony given by that witness.

14 I further certify that I am not

15 related to any of the parties to this

16 action by blood or by marriage and that I

17 am in no way interested in the outcome of

18 this matter.

19 IN WITNESS WHEREOF, I have

20 hereunto set my hand this 15th day of

21 April, 2024.

22

23 _____
   AYLETTE GONZALEZ

24

25