**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| HAGOP HADJIAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | 1:21-CV-00469-ELR |
| | * | |
| | * | |
| MERCEDES-BENZ USA, LLC., | * | |
| | * | |
| Defendant. | * | |
| | * | |

# ORDER

This matter is before the Court on Plaintiff Hagop Hadjian's Motion for Class Certification [Doc. 125], Defendant Mercedes-Benz LLC's Motion for Summary Judgment [Doc. 134] and Motions to Strike the Reports and Rebuttal Reports of Plaintiff's Experts Murat Okcuoglu and Steven B. Boyles [Doc. 136; 147], and Plaintiff's Motion to Exclude Defendant's Experts Keller and Ugone [Doc. 142]. Having been fully briefed, these motions are ripe for review and addressed below.

In this products liability action alleging a design defect, the Court previously stayed its ruling on Plaintiff's class certification motion pending its consideration of Defendant's summary judgment motion and the related motions to exclude/strike because of the potential that summary judgment would dispositively determine

whether Plaintiff could serve as the class representative under Federal Rule of Civil Procedure 23. [Doc. 154]. Thus, the Court first takes up the Motion for Summary Judgment [Doc. 134]. Finding that Defendant is due to prevail on that motion, the Court determines that the other pending motions are due to be denied as moot.

## I. Background

On July 31, 2016, Plaintiff bought a model year 2016 Mercedes-Benz C63 AMG (the "MB C63") from a Mercedes-Benz car dealer in Encino, California. Def.'s Stmt. of Undisputed Material Facts ("SUMF") ¶ A.1 [Doc. 134-2]; Pl.'s Dep. at 34:19–20 [Doc. 134-3]; [Doc. 143-3 at 2]. Six months before buying the MB C63, Plaintiff visited the same car dealership to look at the 2016 AMG C63S and other Mercedes vehicles. Pl.'s Stmt. of Undisputed Material Facts ("SAMF")[1] ¶ P37 [Doc. 143-2]. He test drove the 2016 AMG C63S and spoke to the dealership's employees about the car at that time. Id. ¶¶ P38–39. Before buying the MB C63, Plaintiff also reviewed "papers and documents," including "an owner's manual," that described the vehicle's features and specifications. Id. ¶ P40.[2]

[1] In response to a motion for summary judgment, the Local Rules authorize the filing of a "statement of additional facts which the respondent contends are material and present a genuine issue for trial." LR 56.1(B)(2)(b), NDGa. Thus to avoid confusion, the Court refers to Plaintiff's statement as "Statement of Additional Material Facts" or SAMF.

[2] Defendant contends that that this statement contradicts Plaintiff's testimony and also objects to the statement as irrelevant and immaterial. Def.'s Resp. to Pl.'s SAMF ¶ P40 [Doc. 149]. The Court disagrees with Defendant's contention and overrules its objections.

In March 2017, while Plaintiff was away from home, his brother discovered oil leaking from the bottom of the parked MB C63 and, after turning on the car, found that it was low on coolant and that the low coolant warning light was on. Pl.'s SAMF ¶¶ P45–46. On March 27, 2017, Plaintiff's brother took the MB C63 in for repair to the dealership where Plaintiff bought the car. Id. ¶ P47. The dealership found that the radiator (also referred to in the record as the "intercooler") "for low circuit turbo system has a tinny [sic] hole from road some [sic] material" and recommended the radiator's replacement. Id. ¶¶ P48, P49.[3] After that dealership declined to cover the repair under the car's warranty, Plaintiff's brother went to a different dealership, which replaced the radiator and charged Plaintiff only for the cost of labor. Id. ¶¶ P49–P51. The MB C63 was repaired to Plaintiff's satisfaction, and Plaintiff and his family have continued to drive the car regularly, without another coolant leak. Def. SUMF ¶¶ C.6–D.3.

Plaintiff filed suit for himself and on behalf of others similarly situated, alleging that certain specified Mercedes Benz vehicle models, including Plaintiff's, that Defendant manufactures and sells have a defect in their front bumper covers and air inlets that allows rocks, pebbles, or other road debris to enter and damage the

[3] Defendant qualifies its response to these statements by noting that they are "[u]ndisputed as to quoted portion" but fails to indicate the grounds for dispute concerning the unquoted portions. Thus, Defendant has conceded that the Court "can properly consider the respondent's evidence" for the purposes of the motion. LR 56.1(B)(3), NDGa.

vehicles' radiators (the "Inlet Defect"). Am. Compl. ¶¶ 1, 3–4 [Doc. 41].[4] The following claims survived Defendant's motion to dismiss: (1) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, based on Defendant's failure to disclose and concealment of the Inlet Defect ("the CLRA Claim" or Count I); (2) breach of the implied warranty, pursuant to the Song-Beverly Consumer Warranty Act, Cal. Civ. Code §§ 1792 and 1791.1, *et seq.*, based on the existence of the Inlet Defect, which was inherent at the time of sale, that rendered the vehicles unfit for their intended use ("the Song-Beverly Claim" or Count II); (3) breach of the express warranty based on Defendant's sale of vehicles with the Inlet Defect and its refusal to perform the necessary repairs or replacements free of charge (Count III); and (4) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, based on Defendant's unlawful and unfair and deceptive trade practices related to the Inlet Defect ("the UCL Claim" or Count X"). [See Doc. 42 at 42]; Am. Compl.

Defendant challenges each of these surviving claims on summary judgment. [See Doc. 134-1]. In his response, Plaintiff concedes that dismissal of the CLRA Claim/Count I; Count III; and the claim for restitution under the UCL Claim/Count

---

[4] Although the Amended Complaint includes John Alcorn as co-Plaintiff, he later filed a Notice of Voluntary Dismissal, dismissing his claims without prejudice, [Doc. 56], and on April 6, 2022, at the Court's direction, the Clerk terminated him as a Party.

X is appropriate. [Doc. 143 at 6 n.1, 18 n.5]. Where a plaintiff abandons a discrete claim in response to a summary judgment motion, "that route will result in the entry of judgment on that claim against the plaintiff." Baxter v. Santiago-Miranda, 121 F.4th 873, 884, 886 (11th Cir. 2024). Accordingly, summary judgment against Plaintiff on Counts I, III, and Count X (as to Plaintiff's claim for restitution under that Count) is warranted. The Court addresses the remaining claims—i.e., the Song-Beverly Claim/Count II and Plaintiff's purportedly remaining claim for injunctive relief under his UCL Claim/Count X—below.[5]

## II. Legal Standard

A court may grant summary judgment only if the record shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

[5] Plaintiff purports to abandon the restitution portion of his UCL Claim but seeks to retain the alleged injunctive portion of that claim. Plaintiff proceeds to rebut Defendant's challenge to Count X on that basis. However, Plaintiff does not seek injunctive relief in Count X of his Amended Complaint—the operative pleading in this case. Am. Compl. ¶¶ 188–202 (alleging claim under UCL and requesting *only restitution* pursuant to §§ 17203 and 17204 of the Business & Professions Code). To be sure, § 17203 specifically and separately allows for injunctive relief. But while Plaintiff expressly requests restitution, he makes no such request for corrective advertising or any other prospective injunctive relief. As such, there appears to be no basis for Plaintiff's assertion that this non-existent portion of his UCL Claim remains. Nevertheless, the Court undertakes the following analysis assuming that Plaintiff alleged a claim for injunctive relief under the UCL.

And a factual dispute is material if resolving the factual issue might change the suit's outcome under the governing law. Id. at 248. The court should grant a motion for summary judgment only if no rational fact finder could return a verdict in favor of the non-moving party. Id. at 249–50.

When ruling on the motion, a court must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in the non-moving party's favor. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party need not positively disprove the opponent's case; rather, the moving party must establish the lack of evidentiary support for the non-moving party's position. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this initial burden, to survive summary judgment, the non-moving party must then present competent evidence beyond the pleadings to show that there is a genuine issue for trial. Id. at 324–26. The essential question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52.

**III. Analysis**

The statute of limitations for claims under the Song-Beverly Consumer Warranty Act and the UCL is four years. Cavale v. Ford Motor Co., No. 1:18-cv-00680-LJO-BAM, 2018 U.S. Dist. LEXIS 134830, at *6 n.3 (E.D. Cal. Aug.

8, 2018) (citing Cal. Comm. Code § 2725 for implied warranty claims); Beaver v. Tarsadia Hotels, 816 F.3d 1170, 1178 (9th Cir. 2016) (citing Cal. Bus. & Prof. Code § 17208 for UCL claims). Defendant argues that Plaintiff's claims accrued at the time he bought the MB C63, on July 31, 2016, and were time-barred by the time he filed this action more than four years later, on January 1, 2021. [Doc. 134-1 at 16–17]. Thus, unless an exception applies to toll the statute of limitations, Plaintiff's Song-Beverly and UCL Claims are time-barred.

The discovery rule provides such an exception, and Plaintiff argues that it applies.[6] [Doc. 143 at 18–20]. "The discovery rule postpones accrual of a claim until plaintiff discovers, or has reason to discover, the cause of action." Migliori v. Boeing N. Am., Inc., 114 F. Supp. 2d 976, 982 (C.D. Cal. 2000) (cleaned up). According to Plaintiff, here, the discovery rule tolled the statute of limitations until he discovered the Inlet Defect on March 27, 2017, when the Mercedes Benz dealer in Encino assessed the damage to the MB C63. [Doc. 143 at 20–21]. As Plaintiff correctly recognizes, for the discovery rule to apply a plaintiff must prove "(a) lack of

---

[6] In addition to arguing that the discovery rule tolls his claims, Plaintiff separately argues that, rather than accruing at the time of sale, his Song-Beverly Claim did not accrue until the time "when the breach is or should have been discovered" because (although it is no longer in play) the existence of his express warranty, which warrants the future performance of Plaintiff's car, triggers the discovery rule. [Doc. 143 at 22–23] (quoting and relying on Zuehlsdorf v. FCA US LLC, No. 22-55270, 2023 WL 385175, at *2 (9th Cir. Jan. 25, 2023)). Even under this theory, if Plaintiff should have discovered the breach upon buying the MB C63 or at any time before the four-year period to the day he filed the Complaint, his Song-Beverly Claim would still be time-barred. Accordingly, the Court applies the discovery rule to both the Song-Beverly and UCL Claims.

knowledge; (b) lack of a means of obtaining knowledge (in the exercise of reasonable diligence the facts could not have been discovered at an earlier date); and (c) how and when he did actually discover the claim." Migliori, 114 F. Supp. 2d at 982 (cleaned up). Under the discovery rule, "the statute runs once [the plaintiff] is put on inquiry notice: when the circumstances would lead a reasonable person to suspect wrongdoing." Ries v. Ariz. Bevs. USA LLC, 287 F.R.D. 523, 534 (N.D. Cal. 2012).

Plaintiff points to evidence that he visited the Mercedes-Benz dealership, took the car for a test drive, spoke with dealership employees, and reviewed the car's specifications and features before buying the car, but he remained unaware of the Inlet Defect before he bought the MB C63. Pl. SUMF ¶ P43–P44. However, he provides no evidence indicating that he would have been unable to obtain knowledge of the defect through the exercise of reasonable diligence after buying the car and in the remaining five months of 2016.[7]

According to Plaintiff's expert, the MB C63 has "large aperture grill[e]s for all three openings under the front bumper" and those "grill[e] apertures allow road debris to pass through and damage the radiators." Prelim. Expert Rep. of Murat

[7] Because the Complaint was filed on January 1, 2021, to the extent the discovery rule applies, any discovery of the claims before January 1, 2017, would nevertheless render them barred by four-year statute of limitations.

Okçuoğlu ("Okçuoğlu Prelim. Rep."), Part 2 at 6 [Doc. 126-3]. Mr. Okçuoğlu's report includes photographs of the front view of the MB C63 in which the grille covering the three areas under the front bumper as well as the engine components behind the grille are visible to the naked eye. Id. Part 1 at 20–22 [Doc. 126-2]; Part 2 at 2–3.[8] Thus, it is apparent that a visual inspection of the grille on Plaintiff's MB C63 would indicate the size of the grille's openings and make apparent the possibility that road debris smaller than the size of the openings could enter the engine compartment behind the grille and potentially damage engine components. Indeed, when asked to provide a lay person's perspective, Steven Boyles, Plaintiff's damages expert testified that he had formed his understanding of the defect (i.e., "debris can get into the . . . vehicle and, to the extent that there is something like a radiator to be damaged, it could be damaged") based on "various pictures that [he'd] seen and how the car is designed." Dep. of Steven Boyles 39:24–40:10 [Doc. 134-6]. In essence, the record shows that by looking at the grille of his MB C63, Plaintiff could have determined that rocks and other road debris could get into the engine compartment through the grille's openings. This information should have placed Plaintiff on notice to inquire into the potential for damage resulting from such a breach of the engine compartment.

[8] Compare Vehicle Identification Number (VIN) of Plaintiff's vehicle [Doc. 143-3 at 2], with VIN of the "subject vehicle" included in Mr. Okçuoğlu's report [Doc. 126-2 at 20–21].

Although Plaintiff argues that he "had no reason to reasonably suspect or investigate the insufficiency of [the MB C63's] grille protection for [the MB C63's] radiator," he provides no evidence indicating why the grille openings themselves did not place him on inquiry notice.[Doc. 143 at 21]. Plaintiff's Statement of Material Facts cites to his declaration for the fact that he was not aware, and had no way of knowing, of the Inlet Defect before March 28 [sic], 2017. Pl. SAMF ¶ P52 (citing Pl. Decl. ¶ 16). However, neither the cited paragraph nor any other portion of Plaintiff's declaration contains this assertion. Accordingly, the Court considers this assertion attorney argument rather than evidence indicating a factual dispute. For example, Zuehlsdorf v. FCA US LLC, No. 22-55270, 2023 WL 385175, at *2 (9th Cir. Jan. 25, 2023), the case on which Plaintiff relies to support his argument that an issue of fact exists over the application of the discovery rule to the March 27, 2017 claim discovery date, demonstrates why summary judgment is appropriate here.

In Zuehlsdorf, the defendant argued that the statute of limitations barred the plaintiff's breach of implied warranty claim because the plaintiff was on inquiry notice (of an alleged transmission defect) from the time of sale because his car had always exhibited an acceleration lag. Id. at *2. However, there was evidence in the record (i.e., the plaintiff's testimony) that after reading the owner's manual, the plaintiff understood that transmissions were designed to operate with a lag and, thus, he did not consider his car defective. Id. at *2. Here, there is no explanation from

Plaintiff for why, having observed the openings on the grille on the MB C63 in the course of his use of the car after having bought it, he believed that the grille would adequately protect his engine components and, thus, did not suspect a defect. Accordingly, the Court concludes that under the undisputed facts, the discovery rule does not apply to toll the accrual of Plaintiff's Song-Beverly and ULC Claims until Plaintiff discovered the Inlet Defect on March 27, 2017. Rather, Plaintiff failed to show a material dispute as to the existence of inquiry notice from around the time of sale. And, because Plaintiff's Song-Beverly and UCL Claims were filed outside of the four-year statute of limitations, they are time-barred.

## IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment. [Doc. 134]. In view of the grant of summary judgment, the Court **DENIES AS MOOT** Defendant's Motions to Strike the Reports and Rebuttal Reports of Plaintiff's Experts Murat Okcuoglu and Steven B. Boyles [Doc. 136; 147] and Plaintiff's Motion to Exclude Defendant's Experts Keller and Ugone [Doc. 142] and Motion for Class Certification [Doc. 125].[9]

---

[9] Because Plaintiff's individual claims are dismissed, he cannot adequately protect the interests of the class he seeks to represent. Thus, his bid to serve as class representative fails, and, for this reason, the Court denies his class certification motion without determining whether the proposed classes otherwise satisfy the requirements of Rule 23. See Michael Xu v. Porsche Cars N. Am., Inc., 655 F. Supp. 3d 1214, 1243 (N.D. Ga. 2023).

Because no issues remain pending in this action, the Court **DIRECTS** the Clerk to enter judgment in favor of Defendant and to **TERMINATE** this matter.

**SO ORDERED**, this 25th day of February, 2025.

Eleanor L. Ross

Eleanor L. Ross
United States District Judge
Northern District of Georgia